## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

RANDY BROWN
Plaintiff,

vs.                                    **CASE NO**: 1:14-cv-02031   (A B J)

JP MORGAN CHASE, et. al.,

### PLAINTIFF'S MOTION TO STRIKE PLEADINGS BY COURT-APPOINTED ATTORNEY THAT OMIT MATERIAL FACTS

## I. INTRODUCTION

Court-appointed attorney David Hoskins, while representing Plaintiff against JP Morgan Chase et, al., (Chase) omits key portions of Plaintiff's original factual allegations presented in Plaintiff's *Second Amended Complaint* on the pretext of amending Plaintiff's Complaint.

In particular Hoskins omits the *express promises* that Chase, Plaintiff, and Plaintiff's family exchange in conjunction with the *express terms* agreed upon that confirm the intention of the parties to be bound by oral contract.

In fact, the oral contract, as specified in the *Second Amended Complaint*, modifies the *Deed of Trust* by obligating Plaintiff's family to act as *surety*, a cornerstone of the *oral contract* that enables Chase to receive remittance immediately upon demand from Plaintiff's family.

In exchange for the family's promise to act as surety, Chase promises: (1) to accommodate Plaintiff by not penalizing the account for Plaintiff's oversights, and (2) to communicate with Plaintiff's family concerning the account. Chase also promises that the oral contract will transfer with the account.



RECEIVED

FEB - 3 2017

After omitting all factual allegations related to the oral contract, Hoskins introduces new allegations that echo and corroborate arguments contained in the defense motions for dismissal that are currently pending before the Court.

*Section III.*, of this *Motion* provides an *Outline* that contrasts Plaintiff's original factual allegations about the oral contract with Hoskins' unauthorized omissions of material fact related to Plaintiff's factual allegations.

## II.        Reconsideration of Plaintiff's Request for Relief As Permitted Under Rule 60(b)(3)(6)

FRCP 60(b)(3)(6) allows for the reconsideration of Plaintiff's request for relief based upon the following facts:

> **a)** Plaintiff's full participation during the hearing held on January 6, 2016 was undermined by the effects of chemotherapy causing reduced stamina, concentration, and vision.

> **b)** Hoskins' conduct in omitting of portions of Plaintiff's original factual allegations relevant to the formation of the oral contract was cryptic, difficult to discover, thereby preventing Plaintiff from sufficiently recognizing and commenting upon the omissions at the hearing.

The following outline contrasts Plaintiff's original fact pattern presented in the *Second Amended Complaint* with Hoskins' unauthorized factual allegations that result from Hoskins' omitting key portions of Plaintiff's fact pattern related to the promises, duties, and terms relevant to the formation of the oral contract:

## III.        Outline of Omissions In Hoskins' "Opposition" to Defendants' Motion to Dismiss

1.        (a)  "The arrangement with Chase allowed . . . Plaintiff to become current on the mortgage" (See Hoskins' *Opposition, p. 3*).

> Hoskins omits to state that Plaintiff's original request for assistance concerns a disability-based accommodation for digital access to allow Plaintiff's family to manage Plaintiff's account.

Hoskins also omits to state that Chase denies Plaintiff's ADA
request for digital access then pressures Plaintiff to accept
an oral contract that is contingent upon Chase's vetting
the ability of Plaintiff's family to act as surety which:

> (71) . . . allows Chase to obtain payments upon
> demand in sums of several thousand dollars per phone
> call.

> (72) In exchange for the commitment of Plaintiff's family to
> to pay arrearages Chase informs Plaintiff's family that
> erratic or inconsistent account management by Plaintiff
> would be tolerated as long as Plaintiff's brother and
> mother acted in a timely manner to phone calls from
> from Chase about . . . matters affecting Plaintiff's
> account.

> (73) Even though, the terms of the oral agreement interfere
> with the terms of the Deed of Trust, Chase promises that the
> oral agreement would modify the Deed of Trust as long as
> Plaintiff's family adheres to all promises made to Chase.

(See paragraphs 71-73 in Plaintiff's *Second Amended Complaint*.)

**2.**    (b) "Sometimes short payments were made but then additional
money was paid in the following month to keep the mortgage
current or at least . . . close to current" (See Hoskins' Opposition p. 3).

Hoskins' omits the specific terms and promises that define
*full performance* of the oral contract that Chase participates
in for more than three years:

> (72) In exchange for the commitment of the family to pay arrearages
> Chase informs Plaintiff that inconsistent account management by Plaintiff
> would be tolerated as long as Plaintiff's brother and mother acted in a
> timely manner to phone calls from Chase about all significant
> matters affecting Plaintiff's account.

(See paragraph 72, in Plaintiff's *Second Amended Complaint*.)

**3.**   (c) "On or around June 2013, Chase stopped communicating about
the status of the account" (See Hoskins *Opposition* p. 3).

Hoskins omits to state that Chase promised to communicate in
exchange for Plaintiff's family's promise to pay arrearages on
demand. Chase breaches all expressed terms of the oral
agreement around July of 2013:

(81) Rather than honor its promise to communicate
with Plaintiff's brother and mother who had promised to
act as surety, Chase secretly makes random calls and deceptively
documents the failure to receive payment from unknown
persons unaffiliated with the oral agreement as an indication
of the failure to collect money on the account.

(See paragraph 81, in Plaintiff's *Second Amended Complaint*.)

**4.**   (d) "On August 19, 2013, the loan servicing was transferred from Chase
to Defendant Ocwen Loan Servicing" (See Hoskins' *Opposition* p. 3).

Hoskins omits to mention Chase's express promise to communicate
with Plaintiff's family and to transfer the oral contract with the account,
in exchange for the family's promise to pay balances:

(90) Chase participates in the oral agreement beginning
in February 2009 but breaches the agreement around
July 2013, involving Ocwen in the aftermath of the
breach . . . for the purpose of concealing facts pertinent
to the oral agreement in creating a manufactured default.

(91) Despite having a longstanding promise from
Plaintiff's family to act as surety, Chase ignores
that agreement.

(See paragraphs 90, 91 in Plaintiff's *Second Amended Complaint*.)

**5.**   (e) "When the account was transferred, Chase either failed to alert
Ocwen of the accommodation . .  failed to fully describe or

otherwise communicate the terms of the accommodation"
(See Hoskins's Opposition p.3).

Hoskins omits to specify the terms associated with
the oral contract:

(78) In addition to breaching the oral agreement by failing
to communicate with Plaintiff's family, Chase acts secretively
by calling random numbers . . . later producing lists of
persons who share no relationship to Plaintiff pretending
to make . . . a good faith effort of debt collection, while
refraining from communicating with Plaintiff's family
who would provide payment as prescribed under the
oral agreement.

(See paragraph 78, in Plaintiff's *Second Amended Complaint.*)

6.   ( f) "Alternatively it may be that Chase advised Ocwen of the
accommodations and Ocwen Loan Servicing refused to honor
the accommodation agreement" (See Hoskins' *Opposition* p. 3).

Hoskins omits to state that the family provided full
performance of the terms of the oral contract but
Chase breaches the contract while transferring the loan:

(81) Rather than honor its promise to communicate with
Plaintiff's brother and mother who had promised to act
as surety, Chase secretly makes random calls and
deceptively documents the failure to receive payment.

(See paragraphs., 71 in Plaintiff's *Second Amended Complaint.*)

7.   (g) "When substantial payments were missed, Plaintiff requests that
Ocwen either honor the previous accommodation agreement reached
between . . . Plaintiff and Chase or enter into a new agreement
providing the same or an equivalent accommodation" (See Hoskins'
*Opposition*, p.3.)

Hoskins omits to state that the breach causes the family to
make payments by guessing the amount owed, while
Ocwen misappropriates the payments, as a pretext to
threaten foreclosure:

(93) Acting on behalf of Chase, Ocwen tells Plaintiff not to make payments because Ocwen intended to take Plaintiff's house and that payments would not be accepted, but Plaintiff wires $1,147.00 to Ocwen via Western Union on September 15, 2013, saving the receipt.

(94) . . . October 2013 . . .  Plaintiff wires . . . $1,150.00 and an additional payment of $40.00.

(95) . . . November 2013 assisted by family, Plaintiff wires . . . $1,175.00

(96) December 2013 . . . $2,294.00 to Ocwen from a Chase account.

(97) . . . January 2014, [transfer of] $2,294.00 to Ocwen.

(See paragraphs 89-98 in Plaintiff's *Second Amended Complaint*.)


## IV.                                   Fed.  R. Civ. P. 12(f)

FRCP 12(f) authorizes the Court to strike any improper or "scandalous" matters from all pleadings submitted by Hoskins:

a)  Hoskins' omissions of material fact described in paragraph 1(a) of section III should be struck from all pleadings submitted by Hoskins for failing to adhere to Plaintiff's original factual allegations about Plaintiff's accommodation request to assist Plaintiff's family in receiving electronic access in order to manage Plaintiff's account. Plaintiff never asks for help in bringing Plaintiff's account current, further justifying striking any assertion by Hoskins that reflects any omission of fact concerning the nature of Plaintiff's accommodation request also striking any variation of the false allegation in question that is either referenced or intimated, regardless of how subtly expressed.

b) Hoskins' omissions of material fact described in paragraph 2(b) of section III should be struck from all pleadings submitted by Hoskins for failing to adhere to Plaintiff's original factual allegations about the promises exchanged and the terms agreed upon by Chase and Plaintiff's family about *full performance* related

to Plaintiff's family duty to act as surety as discussed in the Second Amended
Complaint.

Hoskins omits facts in Plaintiff's original fact pattern that describe the
oral contract as modifying the provisions of the Deed of Trust thereby
requiring the family to act as surety. Hoskins' omits to mention how the
oral contract modifies the Deed of Trust concerning payments,
an omission that constitutes a distortion of Plaintiff's fact pattern and should be
struck from all pleadings where any variation of the false allegation in question is
either referenced or intimated, regardless of how subtly expressed.

c) Hoskins' omission of material fact described in paragraph 7(g) of section III
   should be struck based upon Hoskins' omitting to mention the commitment by
   Plaintiff's family to honor the contractural obligation to act as surety. The
   omission distorts Plaintiff's fact pattern concerning the family's providing full
   performance consistent with the terms of the oral contract and should be struck
   from all pleadings where any variation of the false allegation in question is
   either referenced or intimated, regardless of how subtly expressed.

d) Hoskins' omission of material fact described in paragraph 3(c) in section III
   should be struck based upon Hoskins' omitting to mention the promises made
   by Chase in exchange for promises made by Plaintiff's family obligating
   Chase to communicate about important issues affecting the account. Any
   variation of Hoskins' omission of fact implying that Chase did not have a
   contractual obligation to communicate constitutes a distortion of Plaintiff's
   fact pattern an should be stricken from any pleading submitted by Hoskins.

f) In paragraph f(g) of section III, Hoskins' misconstrues Plaintiff's
   accommodation request as described in Plaintiff's Second Amended
   Complaint, omitting to mention any of the terms related to Plaintiff's
   accommodation request with accuracy. Based upon Hoskins'
   omissions in alleging to describe Plaintiff's accommodation request
   related to the oral contract should be struck.

g) Hoskins' repetitive omissions of fact related to Plaintiff's fact pattern

justifies the Court's striking any attempt by Hoskins to describe Plaintiff's factual allegations in any pleading submitted to the Court.

Hoskins' failure to describe Plaintiff's fact pattern with accuracy justifies the Court's providing the following relief:

### Plaintiff's Request for Relief:

1. removing from public access Hoskins' Motion to Withdraw and any documentation about the Court's reasons for granting Hoskins' motion

2. striking from Hoskins' pleadings any description that alleges to be an account of Plaintiff's factual allegations, thereby preventing the defendants from receiving any benefit from Hoskins' omissions

3. a monetary penalty of between $5,000 and $10,000 to defray the cost of retaining new counsel.

4, Plaintiff requests a slight extension of time in order to find counsel willing to accept Plaintiff's case in light Hoskins' withdrawal.

Date: February 3, 2017

Respectfully submitted,

Randy Brown, Plaintiff

Phone: 202- 701-9974

E-mail: zeugma7@verizon.net

### Certificate of Service

Plaintiff caused a copy of this Motion to be served upon attorney Hoskins on February 3, 2017 via E-mail.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDY BROWN,                                    *

    *Plaintiff*                              *

v.                                             *        Case No.: 14-2031(ABJ)

JP MORGAN CHASE BANK, N.A.                     *

and                                            *

OCWEN LOAN SERVICING, LLC                      *

and                                            *

SELECT PORTFOLIO SERVICES, INC.*

    *Defendants.*                            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO MOTIONS TO DISMISS

Plaintiff, Randy Brown, by his undersigned counsel, submits this memorandum of law in opposition to the motions to dismiss filed by each of the Defendants, Dkt. 42, Dkt. 43 and Dkt. 44.[1]

As discussed more fully below, the motions to dismiss should be denied because the Third Amended Complaint adequately alleges each of the causes of action asserted.

---

[1] Due to a breakdown in the attorney client relationship, undersigned counsel is also filing a motion to withdraw. Undersigned counsel has shared this opposition with the Plaintiff before filing it and files this memorandum in order to comply with the scheduling order so as to not prejudice the Plaintiff or the Defendants in this case.

## APPLICABLE LEGAL STANDARD

The pleading standard applicable to this case is governed by *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The *Twombly* "standard does not call for detailed factual allegations, but it does require a complaint to recite facts sufficient to at least 'raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Am. Fed'n of State, Cty., Mun. Employees Local 2401 v. D.C.,* 796 F. Supp. 2d 136, 139 (D.D.C. 2011), quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Ultimately, what is necessary to survive a motion to dismiss under Rule 12(b)(6) is that the complaint "contain sufficient factual matter that, accepted as true, would allow the Court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.,* quoting *Twombly,* 550 U.S. at 557.

## FACTUAL ALLEGATIONS

Plaintiff alleges that he suffers from a pre-existing cognitive disorder that affects his vision, hearing, memory, and organizational skills. Dkt. 40, ¶ 8.

At that time, Defendant JP Morgan Chase Bank, N.A. serviced the Plaintiff's residential mortgage loan for a property located at 1417 Ames Place, N.E., Washington, D.C. *Id.,* ¶9

On or about February 15, 2009, the Plaintiff contacted Defendant JP Morgan Chase Bank, N.A. (hereafter "Chase") and requested an accommodation for digital access to enable the Plaintiff's family to electronically manage Plaintiff's mortgage account. *Id.,* ¶ 10. This request was refused and instead

Chase entered into an oral agreement to allow information about the mortgage to be shared with his brother and with his motion and to accept payments from them on behalf of the Plaintiff. *Id.,* ¶¶ 11-12. Thus, while Chase did provide some accommodation it nonetheless refused to provide the digital access that the Plaintiff requested.

The arrangement with Chase allowed the Plaintiff to become current on the mortgage. Sometimes short payments were made but then additional money was paid in the following month to keep the mortgage current or at least very close to current. *Id.,* ¶¶ 13-14.

In or around June 2013, Defendant JP Morgan Chase Bank, N.A. stopped communicating with the Plaintiff's family about the status of the account. *Id.,* ¶ 15. On August 19, 2013, the loan servicing was transferred from Chase to Defendant Ocwen Loan Servicing LLC (hereafter "Ocwen"). *Id.,* ¶ 16.

When the account was transferred Chase either failed to alert Ocwen of the accommodation for the Plaintiff's disability that had been made in 2009 or failed to fully describe or otherwise communicate the terms of the accommodation. *Id.,* ¶ 18. Alternatively, it may be that Chase advised Ocwen of the accommodation and Ocwen Loan Servicing refused to honor the accommodation agreement. *Id.,* ¶ 19.

When subsequent payments were missed, Plaintiff requested that Ocwen either honor the previous accommodation agreement reached between the Plaintiff and Chase or enter into a new agreement providing the same or an

equivalent accommodation. *Id.,* ¶ 20. Ocwen refused to provide the request accommodation and the Plaintiff fell behind on the loan and Ocwen started taking steps to foreclose on the property. *Id.,* ¶¶ 21-22.

Ocwen even told Plaintiff not to make payments because Ocwen intended to take Plaintiff's house and for this reason no further payments would be accepted. *Id.,* ¶ 22.

More than $8,000.00 was transferred to Ocwen from September 2013 through January 2014, but Ocwen refused to acknowledge receipt of the payments, prompting a complaint to the DC Department of Insurance, Banking, and Securities. *Id.,* ¶ 24. Only after Plaintiff produced receipts for each and every wire transfer did Ocwen admit that payments were received. *Id.,* ¶ 25.

Fearing that Ocwen would foreclose on the loan, the Plaintiff removed valuable property including a collection of signed Arts and Crafts furniture pieces from Plaintiff's home sending it to auction to prevent Plaintiff's property from being taken during a foreclosure and stored other valuable property with friends. *Id.,* ¶ 28. The Plaintiff also became fearful about the possibility of intruders sent by Ocwen to confiscate Plaintiff's property and for this reason the Plaintiff vacated the property. *Id.,* ¶ 29.

After the Department of Insurance, Banking, and Securities determined that Ocwen mishandled payments, the servicing of the Plaintiff's mortgage account was transferred from Ocwen to Defendant Select Portfolio Servicing, LLC (hereafter "SPS"). *Id.,* ¶ 30.

When the account was transferred Ocwen either failed to alert SPS of the accommodation for the Plaintiff's disability that had been made in 2009 or failed to fully describe or otherwise communicate the terms of the accommodation. *Id.,* ¶ 31. Alternatively, it may be that Ocwen advised SPS of the accommodation and SPS refused to honor the accommodation agreement. *Id.,* ¶ 32.

Plaintiff requested that SPS either honor the previous accommodation agreement reached between the Plaintiff and Chase or enter into a new agreement providing the same or an equivalent accommodation but SPS refused to provide the Plaintiff with the same or an equivalent accommodation. *Id.,* ¶¶ 33-34.

## ARGUMENT

Based upon these allegations of fact, and the reasonable inferences that can be drawn from the allegations, Plaintiff asserts causes of action for violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.,* and for breach of the contractual covenant of good faith and fair dealing.

### A. PLAINTIFF HAS ADEQUATELY ALLEGED A CLAIM FOR VIOLATION OF THE FAIR HOUSING ACT AGAINST EACH DEFENDANT.

The first claim in Plaintiff's Third Amended Complaint alleges violations of the Fair Housing Act (hereafter "FHA") provisions found at 42 U.S.C. §§ 3604(f) (1), (2); 3604(f)(3)(B); and 3605.

Under 42 U.S.C. §§ 3604(f)(1) it is unlawful to "otherwise make unavailable, a dwelling to any buyer" because of a handicap of that buyer. Section

3604(f)(2) also makes it unlawful to discriminate based upon handicap with respect to the conditions of a sale of a dwelling. Finally, § 3604(f)(3)(B) makes clear that discrimination also includes a "refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

This Court has previously held that § 3604 is to be interpreted broadly to provide a remedy for discrimination in the availability of mortgage financing. *See, e.g., Nat'l City Reinvestment Coal. v. Novistar Fin. Inc.,* No. CIV.A. 07-0861 (RCL), 2008 WL 977351, at * 3 (D.D.C. Mar. 31, 2008). That case involved a broad allegation that the lender's "policies against making loans secured by homes on Indian reservations, homes used for adult foster care, and row houses in Baltimore City violate the fair housing laws because these policies intentionally discriminate and have an unnecessary and unjustified disproportionate adverse impact." *Id.* at *1.

The Defendants moved to dismiss claims brought under § 3604 arguing that it did not apply to the mortgage financing process. The Defendants argued that since § 3605 specifically deals with discrimination in the making or purchasing of loans, interpreting § 3604 to also encompasses financing would render § 3605 superfluous. *Id.* at * 2. The court rejected this argument, noting that "the broad language in § 3604 which goes beyond mere refusal to sell or rent by also banning practices that 'otherwise make unavailable or deny'

6

housing . . .was intended to be flexible enough to cover multiple types of housing-related transactions." *Id.,* quoting, *Nat'l Fair Housing Alliance, Inc. v. Prudential Insurance Co. of America,* 208 F.Supp.2d 46, 56 (D.D.C.2002) (Sullivan, J.).

The court also observed that "a less restrictive interpretation of § 3604 is consistent with the broad purpose of the FHA which is to 'promote integrated housing patterns and to discourage discrimination in access to housing.'" *Id.,* citing *Nat'l Fair Housing Alliance* at 57 (citing *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 211-12 (1972)).

Other precedent from the D.C. Circuit confirms that §3604 applies broadly to include the mortgage financing process. *See, e.g., Clifton Terrace Associates, Ltd. v. United Technologies Corp.,* 929 F.2d 714, 719-20 (D.C.Cir.1991) (indicating, in dicta, that "mortgage financing" is an "essential service" within the coverage of § 3604(a) and explaining that "the denial of certain essential services related to a dwelling, such as mortgage financing, ... might result in the denial of housing.").[2]

Under the same reasoning § 3604 should be interpreted to also cover the loan servicing process and a failure, as alleged in this case, to provide a reasonable accommodation in the servicing "rules, policies, practices, or services"

---

[2]       The cases relied upon Defendants — *Gaona v. Town & Country Credit,* 324 F.3d 1050 (8th Cir. 2003); *Fletcher v. Homecomings Fin. LLC,* 2010 WK 1665265 (M.D.N.C Apr. 22, 2010); *Woodworth v. Bank of America, N.A.,* 2011 WL 1540358 (D.Or. Mar. 23, 2011); *Adler v. Am. Home Mortg. Servicing, Inc.,* 882 F. Supp. 2d 1237(D. Colo. 2012); *Webster Bank v. Oakley,* 265 Conn. 539, 830 A.2d 139, 151–52, 155 (2003) — take a differing view that has not been adopted by any court within the D.C. Circuit.

to allow for electronic access for third parties. The Third Amended Complaint adequately alleges a violation of this provision because it alleges that the Plaintiff is disabled, Dkt. 40 at ¶ 8, and that each Defendant refused to provide the reasonable accommodation of allowing his family members to have digital access to his mortgage account or otherwise assist the Plaintiff in keeping current on his mortgage. *Id.* ¶¶ 11, 18-20, 31-34.[3]

Defendants' reliance on *Hunter on behalf of A.H. v. District of Columbia*, 64 F.Supp.3d 158 (D.D.C. (2014), is misplaced because the issue in that case was whether homeless persons who are provided free shelter can state a claim under the FHA even though they are not "buyer[s] or renters" who have been discriminated against in the "sale or rental" of a dwelling. This case does not stand for the proposition that the FHA only applies to the original sale or rental of the housing at issue.

Section 3605 of the FHA prohibits businesses engaging in residential real estate-related transactions from discriminating against any person in the terms or conditions of the transaction because of handicap. Mortgage servicers act as agents of a loan's beneficiary and conduct the day-to-day servicing, or handling, of a borrower's mortgage loan. Servicers collect monthly payments, calculate late fees, manage escrow accounts, track and sometimes impose hazard insurance,

---

[3]   JP Morgan Chase's (hereafter "Chase") argument that it did not discriminate because it granted Plaintiff's request to allow family members to assist in managing the account fails to address the primary failure to accommodate the Plaintiff's disability due to Chase's failure to allow for digital access. *See* Dkt. 40, ¶¶ 10-12.

and, critically, negotiate and process loss mitigation applications with borrowers. In this manner mortgage servicers engage in residential real estate-related transactions effecting handicapped individuals and also have the ability to otherwise make unavailable or deny a dwelling to handicapped individuals.

Plaintiff alleged that his disability affected his ability to communicate with the Defendants and to stay current on his mortgage payments and that the Defendants discriminated against the Plaintiff on the basis of his disability in the manner by which they treated him and caused him damages. They treated him differently from non-handicapped individuals by failing to provide him equivalent ability to keep current on his mortgage account as other, non-disabled, borrowers. The facts alleged in the Third Amended Complaint relating to the refusal to provide digital access, the failure to advise subsequent servicers  of previous accommodations provided, and the failure to continue to provide third party assistance with payments, support an inference that the Plaintiff was treated differently from other borrowers due to his handicap because these failures resulted in the Plaintiff not being able to interact with the servicers with the same effectiveness as non-handicapped borrowers and caused the Plaintiff injury.

**B.   PLAINTIFF HAS ADEQUATELY ALLEGED A CLAIM FOR BREACH OF THE CONTRACTUAL COVENANT OF GOOD FAITH AND FAIR DEALING.**

Under District of Columbia law, a cause of action exists for breach of the implied covenant of good faith and fair dealing against a party whose actions

interfere with the ability of the other party to perform his obligations under the contract. *See Allworth v. Howard University*, 890 A.2d 194, 201 (D.C. 2006). "If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000), citing *Hais v. Smith*, 547 A.2d 986, 987-88 (D.C.1988).

The District of Columbia cases draw support from Restatement (Second) of Contracts § 205 (1981), which instructs that "bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty." *Allworth v. Howard Univ.*, 890 A.2d 194, 202 (D.C. 2006), citing § 205, cmt. d. "'Bad faith' involves 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.'" *Id.*

In this case, the Plaintiff has adequately alleged that he entered into a residential mortgage loan that that was serviced by each of the Defendants, Dkt. 40, ¶¶ 9, 16, 30, and that each Defendant failed to provide him with reasonable accommodations that would have allowed him the opportunity to perform his

obligations under the contract.[4] This constitutes the very type of "inaction" or "lack of diligence and slacking off" that the Restatement (Second) of contracts defines as bad faith.

The statute of frauds is not a bar to this claim because the covenant of good faith and fair dealing is implied in every contract and therefore need not be set forth in any express term. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) ("all contracts contain an implied duty of good faith and fair dealing."). The Plaintiff is thus not suing to enforce an oral contract per se, but rather to enforce the unwritten, implied duty to provide an accommodation that frustrated the Plaintiff's ability to fulfill his obligations under the written mortgage agreement.

Courts that have addressed the issue have held that the statute of frauds does not bar a claim for breach of the implied covenant of good faith and for dealing. For example, in *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 477, 362 P.3d 1037, 1044 (Ct. App. 2015), the court rejected an argument that a claim for breach of the implied covenant of good faith and fair dealing is barred as a matter of law because it "relies on a promise to lend money not evidenced in writing."

The breach of implied covenant claim arises from the mortgage agreement,

---

[4]   Defendant Ocwen Loan Servicing, LLC's (hereafter "OLS") argues that Count II does not apply to it because it is not a party to a contract with the Plaintiff. This argument lacks merit because "an assignee stands in the shoes of his assignor and acquires the same rights and liabilities as if he had been an original party to the contract." *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, 2005 WL 3273979, at *3 (D.D.C. Aug. 9, 2005).

which is a valid express contract that complies with the statute of frauds. is not duplicative. While it is accurate that this claim alleges and alternative basis for recovery on the facts alleged, Chase's argument that this requires dismissal is inaccurate. Courts dismiss breach of implied covenant claims as duplicative when the complaint also alleges a breach of the express terms of the contract and both claims are supported by the same facts. *See, e.g., Simon v. Unum Grp.*, 07 Civ. 11426(SAS), 2008 U.S. Dist. LEXIS 47719, at *8, 2008 WL 2477471 (S.D.N.Y. June 18, 2008) ("If the allegations underlying the breach of the implied covenant of good faith claim and the breach of contract claim are the same, then the good faith claim is 'redundant' and cannot survive a motion to dismiss.").

A breach of the implied covenant of good faith and fair dealing occurs "only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain." *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F.Supp.2d 175, 180–81 (S.D.N.Y.2007) (quoting *Sauer v. Xerox Corp.*, 95 F.Supp.2d 125, 132 (W.D.N.Y.2000)). Thus, claims based on the same fact pattern for violation of the implied covenant and the FHA can be pursued in the same lawsuit under Fed. R. Civ. Proc. 8(d)(2) which allows pleading in the alternative. *See U.S. ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 79 (D.D.C. 2003) ("a plaintiff may plead alternative theories of liability, regardless of whether such theories are consistent with one another.").

Thus, the cases cited by Chase are not on point because they involved

situations where the plaintiff alleged that the same factual allegations supported both a breach of the express terms of the contract and a breach of the implied covenant of good faith and fair dealing. In other words, since both causes of action essentially allege to breach of the underlying contract, they were duplicative of each other.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court the motions to dismiss filed by each of the Defendants.

Dated: December 9, 2016,                     Respectfully Submitted,


                                             */s/ E. David Hoskins*
                                             E. David Hoskins, No. 450361
                                             THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                                             16 E. Lombard Street, Ste. 400
                                             Baltimore, Maryland 21202
                                             (410) 662-6500 (Tel.)
                                             (410) 662-7800 (Fax)
                                             davidhoskins@hoskinslaw.com


## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing document was served electronically through the Court's CM/ECF system upon counsel for all parties.


December 9, 2016.                     */s/ E. David Hoskins*


13